ROBERT BLESSETT and R. Percy Abbey v. E. L. TURCOTTE and M. Turcotte.

(127 N. W. 505.)

**Appeal and Error — Statement of Case — Motion to Strike Out.**

1. In this case, which was tried under § 7229, Rev. Codes 1905, counsel for appellants, after the entry of judgment, caused to be served upon counsel for respondents a proposed statement of the case, consisting of six typewritten pages relating to eighty-seven exceptions, also containing a specification that appellants desire a review of the entire case in the supreme court. No proposed amendments were ever served. In due time and without notice to respondents, the trial court made an order settling a statement of the case, which statement contains a complete and literal transcript of the stenographer's minutes, including all objections, motions, rulings, and exceptions appearing therein, and all of the evidence offered, including exhibits and proceedings had upon the trial. A motion by respondents to strike the proposed statement of the case, excepting only the six typewritten pages relating to the eighty-seven exceptions, and also to strike from the printed abstract so much of the same as relates to the statement of the case and the stenographer's minutes and the exhibits and all of the abstract, excepting the judgment roll, is denied.

**Mortgages — Equitable Assignment — Deed of Mortgagee.**

2. By virtue of his purchase of the premises in controversy from Galloway in the summer of 1896, appellant E. L. Turcotte succeeded to whatever rights

Galloway had in said premises, and became the equitable assignee of the mortgage executed by plaintiff Blessett to Galloway January 25, 1890.

**Mortgages — Mortgagee in Possession — Equity — Adverse Claims — Conditions Precedent to a Recovery.**

3. In an action by parties out of possession against a party in possession to determine adverse claims to real estate, which adverse claims are based upon a mortgage owned by defendant and a tax deed, which mortgage authorized the owner thereof to pay the delinquent taxes upon the premises covered by the mortgage and add the amount to his mortgage debt, before the plaintiffs are entitled to the relief prayed for, they must do equity and reimburse the defendant for all taxes paid by him, and also pay him the amount due upon his mortgage.

Opinion filed July 20, 1910.

Appeal from District Court, Towner county; *John F. Cowan,* J.

Action by Robert Blessett and R. Percy Abbey against E. L. Turcotte. Judgment for plaintiffs, and defendants appeal.

Reversed, and new trial ordered.

*Fred E. Harris (Engerud, Holt, & Frame,* of counsel), for appellants.

Defendant has title by statute of limitations. Nash v. Northwest Land Co. 15 N. D. 566, 108 N. W. 792; Rogers v. Benton, 39 Minn. 39, 12 Am. St. Rep. 613, 38 N. W. 765; Russell v. H. C. Akeley Lumber Co. 45 Minn. 376, 48 N. W. 3.

*Robinson & Lemke,* for respondents.

Tax paid by mortgagee cannot afford ground for adverse possession. Finlayson v. Peterson, 11 N. D. 53, 89 N. W. 855.

Tax deed when its recitals show a void sale is void on its face. Youker v. Hobart, 17 N. D. 296, 115 N. W. 839; King v. Lane, 21 S. D. 101, 110 N. W. 38; Reckitt v. Knight, 16 S. D. 395, 92 N. W. 1077; Thompson v. Roberts, 16 S. D. 403, 92 N. W. 1079.

CARMODY, J. This action was commenced on the 17th day of February, 1907. The amended complaint alleges, in substance, as follows: That the plaintiffs have an estate and interest in certain land in Towner county, North Dakota, to wit, the N. E. ¼ of section 20, township 162, of range 68. That in 1891 the land was patented to plaintiff Blessett, and that by deed he conveyed some title or interest

therein to plaintiff Abbey. That plaintiffs are entitled to the immediate possession of said land. That the defendants claim certain estates or interest in said land adverse to plaintiffs. That in the spring of 1897, the said land being vacant and unoccupied, the defendants entered upon and took possession of the same, and that since said entry have remained in possession of and cultivated the same. . That in the summer of 1896, the land being vacant and unoccupied, the defendants entered upon the same, plowed back 40 acres that had been previously broken and cultivated, and did not fence the land or live on it or put any buildings on it. That the use and occupation of said land was worth $400 per year. That the adverse claim of defendants is based on a mortgage dated January 25, 1890, made by plaintiff Blessett to W. F. Galloway to secure $700 and on an assignment of the mortgage to defendants, also on a pretended tax deed dated March 11, 1897, made by the county auditor to W. F. Galloway, and on a deed from Galloway to defendants dated May 20, 1897. That said tax deed is void, and defendants have never had any title or interest in or lien upon said land, except under said mortgage, and they have wrongfully failed to pay or account for the yearly rents and profits of said land; that during the first five years the rental value of said land was enough, and more than enough, to fully pay and discharge said mortgage debt, which did not exceed the sum of $300, when the mortgage was assigned to defendants. Plaintiffs ask that the defendants set forth all their adverse claims to said property, and that the validity thereof be determined and that the same be adjudged null and void; that plaintiffs do have and recover the immediate possession of said land with $400 a year for the rental value thereof, and that so much of the yearly rental value as may be necessary be first applied to the satisfaction and discharge of the mortgage in the same manner as if it had been indorsed thereon on the 1st day of December each year, and that plaintiffs have such other and further relief as may be just and the costs and disbursements of this action.

Defendants deny that plaintiffs have any estate or interest in said land; deny that plaintiff Blessett holds the legal title in trust for said other plaintiff, and allege that by virtue of a quitclaim deed dated February 13, 1907, plaintiff Blessett conveyed all his interest in said land to plaintiff Abbey, and allege that defendants are the owners and

entitled to the possession of said land by virtue of a tax deed dated March 11, 1897, issued by the county auditor of Towner county to W. F. Galloway and by a warranty deed from Galloway to said defendants executed May 20, 1897; deny that the deeds and mortgages and papers mentioned in plaintiffs' complaint are void, and allege that said deeds and papers are valid and legal; that said mortgage was given for a good and valuable consideration. Defendants allege that more than three years have expired since the execution and delivery of the tax deed mentioned in plaintiffs' complaint and set forth in defendants' answer; as a further defense, that defendants are the owners of the said land and have been in actual, open, adverse, and undisputed possession of such land for more than ten years prior to the commencement of this action, that they have paid the taxes and assessments legally levied thereon during said time, and that plaintiffs' alleged cause of action accrued more than ten years prior to the commencement of this action, and that the same is barred by the statute of limitations.

The facts established on the trial, as far as material here, are as follows: The land was patented to Robert Blessett. Blessett mortgaged the land to W. F. Galloway, defendant's grantor, January 25, 1890, to secure payment of a note for $700 of even date due January 25, 1891. On the 1st day of December, 1891, the land was sold for the delinquent taxes of 1890 to the state of North Dakota, and a certificate of sale issued thereon to the said state of North Dakota. On the 8th day of February, 1894, the said certificate of sale was assigned by George L. Main, county auditor of Towner county, to W. F. Galloway, in which assignment the land was described as the N. E. ¼ of section 2. On the 25th day of November, 1896, notice when time for redemption from the said tax sale, hereinbefore mentioned, would expire, was published, in which notice the land was described as the N. E. ¼ of section 2. On the 11th day of March, 1897, a tax deed on the tax sale hereinbefore mentioned was made by the county auditor of said Towner county to said W. F. Galloway. In the fore part of June, 1896, the defendant E. L. Turcotte by an oral contract made with W. F. Galloway, through his agent Geo. Galloway purchased said land for the sum of $300 and took possession of it, broke 40 acres, farmed and cultivated the land ever since, until the trial of the action, and paid all

taxes levied and assessed against said land beginning with the year 1896. At the time defendant Turcotte made the agreement with said Galloway for the purchase of said land, Turcotte took possession and went to breaking on the land. No person laid any claim to said land until the spring of 1907, when plaintiff Blessett wrote defendant Turcotte a letter stating that he had sold the land. As a payment for the purchase price of said premises on August 10, 1896, defendant E. L. Turcotte executed three promissory notes for $100 each, payable to W. F. Galloway, due, respectively, November 1, 1896, November 1, 1897, and November 1, 1898, which said notes were secured by a real estate mortgage executed on said premises to said W. F. Galloway by defendants Turcotte, who are husband and wife; that said notes were paid; that on the 20th day of May, 1897, said W. F. Galloway and wife executed and delivered to defendants Turcotte a warranty deed of said premises, consideration $300. On December 30, 1901, the said W. F. Galloway assigned to defendant E. L. Turcotte the real estate mortgage hereinbefore mentioned, given by plaintiff Blessett to said Galloway. On February 13, 1907, plaintiff Blessett conveyed to plaintiff Abbey by deed of quitclaim all his interest in said premises, and in the same instrument assigned to said Abbey all of Blessett's interest in the rents and profits, and authorized him to commence and maintain such action as may be necessary to recover the possession of such land and the rents and profits, and also appointed said Abbey his (Blessett's) attorney in fact to commence such action. The said quitclaim deed was executed in the city of Winnipeg, in the province of Manitoba, Canada. Plaintiff Blessett never paid any part of the indebtedness secured by the mortgage given by him to W. F. Galloway.

The case was tried by the court without a jury, and on the 21st day of December, 1907, the court made findings of fact and conclusions of law in favor of plaintiffs and against the defendants. The court found, among other things, that the defendants claim some interest or title to said lands adverse to plaintiffs, and that said adverse claim is based on the $700 mortgage from Blessett to Galloway, dated January 25, 1890, an assignment of said mortgage, the tax deed, hereinbefore mentioned, dated March 11, 1897, and the warranty deed, hereinbefore mentioned, given by Galloway to defendants Turcotte, and also on an oral agreement made in the summer of 1896, whereby in con-

sideration of $300, secured by three promissory notes and a mortgage on said land, the said Wm. F. Galloway did promise and agree to convey to the defendants title to said land. Pursuant to said promise he made to them a warranty deed and an assignment of said mortgage. The court also found that the tax deed is void; that neither said W. F. Galloway nor the defendants have ever had any title or lien upon said land, except under said mortgage. In the summer of 1896, the land being vacant and unoccupied, the defendants entered upon the same and plowed back 40 acres that had been previously broken and cultivated. There is no evidence and no claim that defendants fenced the land or lived on it or put on it any buildings. There is no direct evidence to show the amount due on the mortgage given by Blessett to Galloway, except that in consideration of $300, secured by three promissory notes, the mortgagee, Galloway, agreed to convey said land to defendants and made to them a deed of the land and an assignment of the mortgage; that during the years 1897 to 1907, inclusive, the reasonable value of the use and occupation of said land was enough, and $150 more than enough, to pay and discharge the mortgage debt. As conclusions of law, plaintiffs are entitled to judgment that said tax deed is null and void, that it be canceled and annulled, and that said mortgage be discharged and canceled, and that the plaintiffs do have and recover the possession of said land, and that the defendants and each of them have no right or title therein, also that the plaintiffs do have and recover a judgment of $150 against defendants and costs. Judgment was entered pursuant to said findings of fact and conclusions of law, from which judgment this appeal is taken. Appellants desire a review of the entire case in this court.

We are met at the outset by a motion of respondents to strike out the proposed statement of the case, excepting only the first six typewritten pages relating to the eight-seven exceptions. Said motion is made on the ground that no copy of any other part of the statement of the case was ever served on plaintiffs' attorneys, and on the ground that no part of the statement of the case which is included in the printed abstract was ever served on the plaintiffs' attorneys, and that nothing therein and no part thereof or anything purporting to be a copy of the same was at any time served on the plaintiffs' attorneys between the trial of this action and the time when the printed abstract was served.

We are also asked to strike from the printed abstract so much of the same as relates to the statement of the case and the stenographer's minutes and the exhibits and all of the abstract excepting the judgment roll. Such motion is based on the annexed affidavit of J. E. Robinson, the pleadings and proceedings herein, the records on file in the office of the clerk of the supreme court, and on the printed abstract herein. The affidavit of J. E. Robinson is quite lengthy, and states, in substance, that the only proposed statement of the case ever served on plaintiffs' attorneys was the six typewritten pages mentioned in said motion, marked, "Statement of the case," consisting of eighty-seven exceptions; that neither the stenographer's minutes nor a copy of the same nor any of the exceptions thereto attached were ever served on the attorneys for the plaintiffs; that the printed abstract herein does not contain a copy of any part of the six pages that were served as a statement of the case; that there was not served on the attorneys for the plaintiffs any specification such as is required by rule 16 of this court (91 N. W. ix).

This motion must be denied. The action was tried under § 7229, Rev. Codes 1905, familiarly known as the "Newman Law," which, as far as material here, is as follows: "In all actions tried by the district court without a jury, in which an issue of fact has been joined, excepting as hereinafter provided, all the evidence offered on the trial shall be received. . . . A party desiring to appeal from a judgment in any such action shall cause a statement of the case to be settled within the time and in the manner prescribed by article 8 of chapter 10 of this Code. . . . But if the appellant shall specify in the statement that he desires to review the entire case, all the evidence and proceedings shall be embodied in the statement." Section 7058, Rev. Codes 1905, provides, among other things, as follows: "The proposed statement and amendments must, within twenty days thereafter, be presented by the party seeking the settlement thereof to the judge, who tried or heard the case upon five days' notice to the adverse party. At the time designated the judge must settle the statement. If no amendments are served, or if served, are allowed, the proposed statement may be presented with the amendments, if any, to the judge for settlement without notice to the adverse party." The proposed statement in the case at bar, consisting of six typewritten pages, served

upon the plaintiffs' attorneys, contained a specification that appellants desired a review of the entire case in this court. Rule 15 of this court (91 N. W. viii), as far as material here, is as follows: "In all cases where the specification shows that the entire case is to be reviewed in the supreme court, the statement of the case must contain a complete and literal transcript of the stenographer's minutes (including all objections, motions, rulings, and exceptions appearing therein), corrected by the district court on settlement to conform to the truth, and a literal transcript of all evidence offered by deposition (including all objections, motions, rulings, and exceptions shown by such depositions), and must contain all of the evidence offered (including exhibits) and proceedings had upon the trial." Plaintiffs' attorneys knew that the trial court had no authority to settle the proposed statement of the case served upon them. They served no amendments, and, when the proposed statement was presented to the trial court, it was settled in the only way in which the trial court could have settled it. There is no claim that the statement does not contain a complete and literal transcript of the stenographer's minutes, including all objections, motions, rulings, and exceptions, and all exhibits and proceedings had upon the trial. Respondents have not been prejudiced by the irregularity, if any, in the trial court's settling the proposed statement of the case, and it would be extremely technical to grant this motion. 3 Enc. Pl. & Pr. p. 500, and cases cited; Scribner v. Gay, 5 Mich. 511.

This brings us to the merits of the action.

Appellants claim: (1) The tax deed to Galloway was valid on its face. (2) It has been of record and possession held under it for more than nine years before action was commenced. (3) There was no competent evidence to impeach its validity. (4) E. L. Turcotte was the assignee of a mortgage given by Blessett for $700 and accrued interest, no part of which had been paid. (5) Turcotte had paid all taxes on the premises since 1896. (6) Blessett had abandoned the land. (7) If Turcotte was not the owner under the tax deed, he was the mortgagee in possession.

In our judgment the tax deed is void. The assignment of the certificate of sale to Galloway is void. It describes the land as part of section 2, instead of section 20. The assignment of the tax sale certificate must describe the land. It must be in writing and under the

hand and seal of the county auditor. Rev. Codes 1905, § 1588. The redemption notice is null and void. It describes the land the same as the assignment. The notice must describe the land, the amount for which the same was sold, the amount required to redeem, and the time when the redemption period will expire. Rev. Codes 1905, § 1608; Blakemore v. Cooper, 15 N. D. 5, 4 L.R.A.(N.S.) 1074, 125 Am. St. Rep. 574, 106 N. W. 566.

It is undisputed that in the summer of 1896, the land being vacant and unoccupied, defendant entered upon said premises and took possession thereof, and has held possession continuously ever since. His possession during all that time has been confessedly adverse. Plaintiffs allege, and it is undisputed, that the adverse claims of defendant are based upon the mortgage and tax deed. No claim is made but that the mortgage given by Blessett to Galloway was a good and valid mortgage, and that no part of the same was ever paid. It is apparent from the evidence that plaintiff Blessett abandoned the land and moved to Canada. He allowed the land to be sold for the taxes of 1890 and to go to a tax deed. He paid no taxes on the land beginning with the year 1896, and probably not before that time. The evidence does not show who paid the taxes on said land for the years 1891, 1892, 1893, 1894, and 1895. He made no claim to the land until February 13, 1907, when, for a consideration of $1, he conveyed his interest in it by deed of quitclaim to his coplaintiff, Abbey. This deed was made and executed at Winnipeg, Canada. As hereinbefore stated, plaintiff Blessett abandoned the land and moved to Canada, where he resided at the time the quitclaim deed to his coplaintiff, Abbey, was made. The mortgage executed by Blessett to Galloway gave him the right to pay the taxes and add the amount so paid to his mortgage debt. By virtue of his purchase of said premises from Galloway in the summer of 1896, appellant E. L. Turcotte succeeded to whatever rights Galloway had in said premises, and became the equitable assignee of the mortgage executed by plaintiff Blessett to Galloway January 25, 1890. It is undisputed that defendant Turcotte paid the taxes on said premises from 1896 to 1907, inclusive. There is no claim that any portion of the taxes so paid are invalid. The complaint is not strictly one for determining adverse claims. It seems to be a combination of an action to determine adverse claims for an accounting and to redeem from the

$700 mortgage. It prays that so much of the yearly rental value as may be necessary be first applied to satisfy and discharge the first mortgage in the same manner as if it had been indorsed thereon on the 1st of December each year, commencing with the year 1897, and that the plaintiffs have such other and further relief as may be just.

This is an equitable action to be determined on equitable principles. Before the plaintiffs are entitled to the relief prayed for, they must do equity and reimburse the defendant E. L. Turcotte for all taxes paid by him, also pay him the full amount due upon the mortgage, as well as the value of the permanent improvements, if any, placed on said premises by defendant or his grantor. On the other hand, the latter should be required to account to plaintiff for the reasonable value of the rents and profits of such land during the time he has been in possession thereof. The proof upon these matters, as well as upon the question as to the length of time, if any, that defendant and his grantor were in possession as mortgagees, is entirely lacking or altogether too meager to enable this court to intelligently dispose of the equities between the parties. Owing to the condition of the record in these respects, this court has been given much difficulty which might have been avoided. We are, of course, anxious that each party be accorded his full legal and equitable rights, and we have finally concluded that the only safe course to adopt is to order a new trial upon all issues excepting the issue involving the validity of the alleged tax deed. If, upon another trial, defendant shall fail to establish possession under the mortgage for a sufficient length of time to bar plaintiff's right of redemption, then the district court is directed to take a full account between the parties, as to the sum due, if any, on the note or notes secured by the mortgage; the amount of taxes paid by the defendant and his grantor on said property; the value of the permanent improvements, if any, made to said real property by defendant or his grantor; and the reasonable value of the use of such property or the rents and profits thereof, during the time defendant has been in possession of same.

The judgment of the District Court is reversed, and a new trial ordered in accordance with this opinion. MORGAN, C. J., and FISK, J., concur.

SPALDING and ELLSWORTH, JJ., dissenting.

ELLSWORTH, J. (dissenting). My dissent to the foregoing opinion is directed not so much against the conclusions reached by a majority of my associates upon the facts considered by them, as it is to the insufficiency of the record produced here by appellant to warrant the reversal of the judgment of the district court.

In its application to the law of appeal, the principle is elementary, and has for years been so recognized in the practice of this court that the party alleging reversible error in the judgment of a district court has upon him the burden of producing before this court a record of which this court is authorized to take legal cognizance, and which affirmatively shows upon its face the error upon which he relies. If the error appears on the face of the statutory judgment roll, all that is necessary to authenticate the record on appeal is proof by means of a certificate of the judge or clerk of court that it is the judgment roll. On the other hand, if the error relied on does not appear upon the judgment roll, but only in the record of the proceedings upon the trial, it is necessary before such error can be properly presented to and considered by this court that it be brought up by means of a statement of the case prepared, proposed, settled, and certified in the form and manner prescribed by law. The statute discloses in detail the acts that shall be done and the proceedings taken in order to obtain such authentication of a statement of the case, and, if these requirements are not complied with, the deficiency is not supplied by an admission or even a stipulation that the stated case as produced here truly represents the facts occurring on the trial. Thuet v. Strong, 7 N. D. 565, 75 N. W. 922. This court has not then before it a record of which it can take cognizance for the purpose of reversing a judgment which imports verity and upon its face is without error which warrants reversal.

A party desiring to have settled for the purposes of appeal a statement of the case which will show errors of law occurring upon the trial, or that the findings of the court are not sustained by the evidence, must "within thirty days after receiving notice of the entry of judgment or such further time as the court may allow, prepare the draft of a statement and serve the same upon the adverse party. Such draft must contain all the exceptions upon which the party relies, but no particular form of exception is required. . . . Within twenty

20 N. D.—11.

days after the service of the draft of a statement, the adverse party may propose amendments to the same and serve such amendments upon the other party. The proposed statement and amendments must within twenty days thereafter be presented by the party seeking the settlement thereof to the judge who tried or heard the case upon five days' notice to the adverse party. At the time designated the judge must settle the statement. If no amendments are served, or, if served, are allowed, the proposed statement may be presented with the amendments, if any, to the judge for settlement without notice to the adverse party. . . . It is the duty of the judge in settling the statement to strike out of it all redundant and useless matter and to make the statement truly represent the case notwithstanding the assent of the parties to such matter." Rev. Codes 1905, § 7058. If the case in which the statement is prepared is one tried by the court without a jury, and is not an action properly triable by a jury, the statement of the case is to be settled within the time and in the manner referred to in § 7058, although a different form is required both of the body of the statement and of the specifications of error embodied in it. If appellant desires to review the entire case, the only specification necessary is one to the effect that he desires such review in the supreme court. Rev. Codes 1905, § 7229. Rule 15, Supreme Court Rules.

In the case at bar it appears from the affidavit of respondents' attorney and from an examination of the statement of the case filed in this court that the only service made upon respondents' attorney for the purpose of obtaining a settlement of such statement was a document consisting of six typewritten pages designated by appellants' attorney as "draft of statement of the case" and consisting of seventy-seven so-called "exceptions," of which the first is, in the words: "Appellants herein specify that they desire a review of the entire case in the supreme court." The other exceptions or specifications refer entirely to certain proceedings had on the trial of the case being principally objections to the introduction of evidence. Under the rule of this court above referred to, the only exception that was necessary to the preparation of a statement of the case upon which appellant desired a review of the entire case was the one quoted above.

The others were therefore wholly unnecessary, and may be regarded as mere surplusage.

The proof of service upon attorneys for the adverse party of the proposed statement of the case, brought before the judge of the district court at the time settlement was applied for, consists of an affidavit of appellants' attorney to the effect that "on the 18th day of May, 1908, deponent deposited in the postoffice at Rolla, North Dakota, a letter sealed and addressed to Robinson & Lemke, Fargo, North Dakota, postage prepaid, containing a copy of the draft of statement of case in the above-entitled action; . . . that more than twenty days have elapsed since the mailing of said copy of draft of statement of case, and that during said time no proposed amendments to same have been served upon deponent." On this showing without notice to respondents' attorneys, on June 16, 1908, appellants' attorney applied to the district court for settlement of a statement of the case. The statement apparently presented by appellants' attorneys at that time and settled by the district court was a document including not only the six pages of typewritten matter served on respondents' counsel, but in addition thereto a transcript of forty-four pages, containing the testimony taken upon the trial of the action, to which was attached a number of exhibits consisting of a patent, mortgage, deed, certified copies of tax records, and some other papers; in fact, all exhibits introduced and all evidence offered or proceedings had by either party upon the trial. The judge of the district court in certifying the statement recited that "the statement of the case in the above-entitled action having in accordance with law been presented to me for settlement on the 16th day of June, A. D. 1908, and it appearing that due and proper notice of all proceedings therein relating to settlement of the same have been duly given by Fred E. Harris, attorney for defendants above, to Robinson and Lemke, attorneys for plaintiffs herein, and it appearaing that all proceedings herein have been regular and in accordance with law," etc. The statement, when certified, was filed with the clerk of the district court as a part of the record of the case, and was so transmitted to this court. Respondents' attorneys, according to an undisputed showing, received no notice whatever of this settlement of this statement except so far as the service of the list of "exceptions" can be said to operate as such, and did not know that a statement of the case containing a transcript

of the testimony and all exhibits claimed to have been offered in evi-
dence was among the records until appellants' abstract upon appeal,
in which is incorporated the greater part of this evidence, was served
upon them.   They then examined the record on appeal filed in this
court, and, finding here a certified statement of the case containing a
great mass of matter not contained in the draft served upon them,
moved to strike from the files all parts of such statement except the
six pages served, on the ground that these parts were not prepared
and certified in such manner as to warrant this court in taking legal
cognizance of them.

On the hearing of such motion, appellants' counsel did not dispute
the fact that there was no service on respondents' attorneys other than
that of the six pages of so-called "exceptions," but claimed that after
such service and no amendment served within twenty days, when the
proposed statement was presented to the judge of the district court
for settlement, the judge of the district court was authorized in the
discharge of his duty "to strike out of it all redundant and useless mat-
ter and to make the statement truly represent the case," to attach, if
he saw fit, to the six pages served the forty-four additional pages of
testimony together with the exhibits, and that respondent was in no
manner prejudiced by such action of the district court for the reason
that the statement so made up and completed was a true one, and that
respondent, having failed to propose amendments to the draft served
upon him, was presumed to consent to the settlement of the statement,
as it now appears, without notice.   My associates regard the failure
to serve any part of the statement of the case except the specifications
of error as a mere irregularity, and hold that "respondents have not
been prejudiced by the irregularity, if any, in the trial court's settling
the proposed statement of the case, and it would be extremely tech-
nical to grant this motion," and then proceed to a reversal of the judg-
ment for error occurring upon the trial and shown, not by the judg-
ment roll, but by those portions of the statement of the case which
were not served on respondents' counsel and which they have moved
to have stricken from the record.

In my opinion such holding is not only contrary to the express terms
of the statute and inconsistent with every principle established by for-
mer rulings of this court in the matter of the settlement of a statement

of the case, but is in its character revolutionary. The initial step and the basis of all proceedings leading up to the settlement of a statement of the case is the preparation of the statement in a certain form and its service when so prepared upon counsel for the adverse party. This proposed statement must contain certain specifications of error without which it may, even when settled, be disregarded on motion for a new trial for appeal. But there is less reason for regarding the specification as the only essential part of the proposed statement than for holding that the body of the statement may be so considered without the specification. Both the statute and the rules of court provide what the proposed statement of the case shall contain, and it is apparent that, in cases of this class, its essential parts are a literal transcript of the testimony to which are attached all exhibits capable of physical attachment and the specification of error, which in this case consists simply of a declaration that the appellant desires a review of the entire case in the supreme court, all of which must be included in the draft or proposed statement and served on the adverse party. Reference to the statute shows that the district judge is given authority to settle only the proposed statement with the amendments, if any. A statement is proposed by serving it upon the other party. If it is not served, it is not proposed, and the district judge has no authority to settle it. If he settles it without service on the other party, or, in other words, without any authority whatever, this court is not authorized upon appeal to recognize it in any way whatever, and certainly is not in such case permitted to make it the basis for the reversal of a judgment of the district court.

From the affidavit of service made by appellants' counsel, and his action in applying for settlement without notice, it would seem that in serving the statement of the case he was acting under a misapprehension, and that the six pages of "exceptions," denominated by him "draft of statement of the case," was in his mind the draft of a statement such as is required by § 7058 to be served upon the adverse party. After serving this so-called "draft" and receiving no notice of amendment, he seems, from the certificate of the district judge, to have attached to it the transcript of testimony and the exhibits, and presented the entire mass of matter to the judge of the district court as the draft of the statement proposed by him. There is nothing in the certificate

of the district judge which indicates that the proposed statement when presented to him was imperfect in any way, and that in the exercise of his duty "to make the statement truly represent the case" he attached thereto the transcript and the exhibits. His certificate indicates conclusively, I think, that he supposed that the entire proposed statement of the case presented to him for settlement had been served on the adverse party; and, no amendment thereto being offered, he proceeded to settle it accordingly.

The point, therefore, of a statement revised, altered, or greatly enlarged by the district judge at the time of settlement is not presented by the facts of this case. It is apparently a case where the judge under a misunderstanding induced by appellants' counsel settled a statement that had not been proposed. Upon the state of fact shown here, in my opinion appellants have entirely failed to produce a record showing any error whatever of the district court in the entry of this judgment. A purported record of which this court cannot take legal cognizance should be stricken out without hesitation. To hold that respondent is not prejudiced by the consideration of an abortive statement of the case, because he does not demonstrate to this court that it fails to truly show the facts, serves to deprive a judgment of all presumptive correctness and verity, and to lay upon a respondent upon appeal the burden of sustaining it in these particulars by an extrinsic showing. This court has held in a recent decision that a statement of the case admitted to be true in all particulars and properly served could not be considered on appeal, because there was not at the time of settlement a specification of error attached.    McLaughlin v. Thompson, 19 N. D. 34; 120 N. W. 554. Is it now intended to establish the precedent that, if a detached specification of error is served, the statement will be considered when settled, even though the entire body of it has not been proposed? In a decision still more recent this court has held that a statement of the case admitted to be true in all particulars served in its entirety on the adverse party, and to which a proper specification of error was attached, will be stricken out because it was served after the statutory time allowed by § 7058 for such service. Folsom v. Norton (N. D.) 125 N. W. 310. Is it now to be established as a rule of practice that a statement served neither within the statutory time nor in fact at all and settled by a district judge under an evident mis-

apprehension of fact will be considered over the objection of respondent as the basis for the reversal of a judgment? It seems to me that the precedent of the majority opinion in this case must necessarily operate to revolutionize the entire practice of the courts of the state with reference to the preparation and settlement of statements of the case.

The authority given the district court in settling a statement of the case "to strike out all redundant and useless matter, and to make the statement truly represent the case," can mean nothing more than that the proposed statement of the case presented for settlement may be reduced in amount, or in case of clerical error, or mistake in the substance of the matter proposed, be corrected, so as to truly show the facts. The evident intent of the statute is that the appellant shall prepare the statement of the case and give notice to the adverse party of all facts that he desires settled and certified by the district judge. The service upon the adverse party of a statement of the facts to be settled is at least of equal, and in my opinion of vastly greater, importance than that it should be served within a certain time after notice of entry of judgment. The reason stated in the majority opinion as a ground for the denial of respondents' motion to strike out, that "plaintiffs' attorneys knew that the trial court had no authority to settle the proposed statement of the case served upon them. They served no amendments, and, when the proposed statement was presented to the trial court, it was settled in the only way in which the trial court could have settled it," is, I believe, entirely inadequate. The only possible inference from this language is that, when respondent was served with a specification of error or demand for a retrial, it became his duty to at once procure a transcript of the testimony and all the exhibits, and within the twenty days allowed him for that purpose propose this mass of matter as an amendment to the insignificant fragment served by appellant, and that he must do this at the peril that unless done at the end of twenty days a statement which he has had no opportunity to examine may be settled without notice, and he be concluded to question its correctness. I cannot understand how under any reasonable construction the statute can be so read. The statement that the trial court "settled it in the only way in which it could have been settled" seems to imply that, when application is made, the trial

court must settle a statement whether or not one has been proposed. The district court is always at liberty if it knows that a copy has not been served upon respondent's counsel to refuse to settle any statement whatever, and to require appellant to present for settlement a proper proposed statement.

I believe that the district court was entirely without authority to settle such a statement as is here presented, and that this court is without authority to consider it for the purpose of reversing the judgment. Whether or not a judgment of reversal might be properly based upon the judgment roll is not necessary for me to consider, as the majority opinion proceeds entirely upon the facts as shown by the statement of the case.

SPALDING, J. (dissenting in part). Under the terms of the Code relating to the service of a proposed statement of the case, it is contemplated that something will be served containing some semblance of what transpired upon the trial, at least, enough of the proceedings to advise the court as to the merits of the exceptions taken and allowed. In the case at bar the proposed statement served bore no more resemblance to the statement contemplated by the Code of Procedure than as though it had been a blank piece of paper indorsed on the back "Proposed Statement of the Case." In fact, no service was made of anything bearing any resemblance to the required statement. Without service of the proposed statement, I apprehend that the trial court has no power to settle a statement of the case, and, under the facts of this case relating to the settlement of the statement, the court was in the same position that it would have been had a blank piece of paper been served with a proper indorsement on the back of it. I am of the opinion that the district court had under the circumstances no power to settle this statement, and that it ought to be stricken out on motion.

The majority of the court being of the contrary opinion as to the statement of the case, a few words are necessary regarding its conclusions on the merits. I concur in the result arrived at, but do not wish to assent to anything said in the opinion from which it may be inferred that the respondents have any rights as mortgagees in possession. They have never claimed any. Plaintiffs in their complaint

refer to the mortgage as evidencing a lien at some time claimed by the defendants, and not as title. The answer as served sets up a claim under the mortgage, but on the trial respondents asked, and were granted, leave to strike out the allegation of their answer relating to the mortgage.

This left no issue as to the mortgage except that at some time defendants had claimed a lien by virtue thereof. Appellants introduced the mortgage in evidence for the sole purpose, as stated, of showing that respondents were precluded by reason of holding the mortgage and under its terms from obtaining a tax title. Under such circumstances, I think no intimation should be made that respondents are mortgagees in possession. Further, I cannot assent to any statements in the majority opinion to the effect that respondents took possession of the land in controversy in June, 1896, and have held possession continuously ever since. I think such statement is not supported by the evidence. Another sentence in the majority opinion, if taken literally, may lead to confusion on a new trial. It is said that the plaintiffs must reimburse defendant Turcotte for all taxes paid by him, the mortgage debt, interest, etc., before they are entitled to the relief prayed for. In my opinion all that is necessary on the part of respondents is for them to offer to pay the balance, if any, found due Turcotte on a complete accounting between them.