Henry STROM, Effie Shearon, Ruth Stuart, Erwin Strom, Robert Strom and Mabel Kong, Plaintiffs and Appellants,

v.

Olaf GISKE, A. M. Fruh, Thomas W. Leach, Carl Thompson and Williams County, a Municipal Corporation and Sub-Division of the State of North Dakota, Defendants and Respondents.

No. 7352.

Supreme Court of North Dakota.

Dec. 17, 1954.

Rehearing Denied March 15, 1955.

Swendseid & Bekken, Stanley, N. D., Lashkowitz & Lashkowitz, Fargo, N. D., for appellants.

Eugene A. Burdick, Williston, N. D., for respondent Olaf Giske.

Strutz, Jansonius & Fleck, Bismarck, N. D., for respondents A. M. Fruh, Thomas W. Leach and Carl Thompson.

SATHRE, Judge.

This is an action to determine adverse claims brought by the plaintiffs against the defendants to quiet title to the following described property situated in the county of Williams and State of North Dakota:

The south half of the Northeast quarter and the West half of the Southeast Quarter of Section Thirteen, Township One Hundred Fifty-five, Range Ninety-six.

The complaint is in the statutory form. The defendant Olaf Giske answered alleging that he was the owner of the land described in the complaint; that he acquired said land through a tax deed from Williams County, and demanded judgment quieting title in him. The defendants A. M. Fruh, Thomas W. Leach and Carl Thompson answered claiming their interests by virtue of a mineral deed and oil and gas leases from the defendant Olaf Giske. The validity of their claims is dependent upon the validity of the title of the defendant Olaf Giske. The defendant Williams County did not answer and made no appearance. The case was tried to the court without a jury at Williston, North Dakota before the Hon. Roy. A. Ilvedson, Judge of the District Court. The trial Court found for the defendants quieting title in them in accordance with their respective claims, and plaintiffs appealed from the judgment.

Before argument on the merits defendants moved for dismissal of the appeal upon the following grounds:

1. That it affirmatively appears from the files certified to the Supreme Court by the Clerk of the District Court of Williams County, North Dakota, that proof of service of the Notice of Appeal, as to Defendants A. M. Fruh, Thomas W. Leach, and Carl Thompson, necessary adverse parties, was not filed in the office of the Clerk of the District Court of Williams County, North Dakota, within six (6) months after the service of the Notice of Entry of Judgment in this action, as required by NDRC(1943) Sec. 28–2705.

2. That Appellants Effie Strom, Ruth Stuart, Edwin Strom, Robert Strom and Mabel Kong, have failed to serve and file their undertaking on appeal as required by NDRC (1943) Sec. 28–02705 and Sec. 28–2709, and serving and filing of an undertaking on appeal not having been waived.

With reference to the first ground urged we have examined the record and we find that counsel for plaintiffs admitted service of Notice of Entry of Judgment April 25, 1952; that counsel for defendant Olaf Giske admitted service of the Notice of Appeal and Undertaking on Appeal on October 20, 1952 and that the endorsement of the clerk of the district court shows that the same were filed in his office on October 22, 1952, which would be within six months

after service of Notice of Entry of Judgment. Counsel for defendants A. M. Fruh, Thomas W. Leach and Carl Thompson admitted in writing service of the Notice of Appeal and Undertaking on Appeal on October 22, 1952. The endorsement made by the clerk of the district court on the written admission of service shows that it was filed in his office October 30, 1952. It appears therefore that the notice of appeal and undertaking on appeal were served upon all of the defendants within the six months allowed for appeal.

Section 28-2705, NDRC 1943, prescribes the procedure for taking appeals and is as follows:

"An appeal must be taken by serving a notice in writing signed by the appellant or his attorney on the adverse party and filing the same in the office of the clerk of the court in which the judgment or order appealed from is entered, stating the appeal from the same, and whether the appeal is from the whole or a part thereof, and if from a part only, specifying the part appealed from. The appeal shall be deemed taken by the service of a notice of the appeal and perfected on service of the undertaking for costs, or the deposit of money instead, or the waiver thereof as in this chapter prescribed."

The necessary requirement under the statute quoted is that the notice and undertaking be served and filed within the time allowed for appeal. The statute provides that "The appeal shall be deemed taken by the service of a notice of the appeal and perfected on service of the undertaking for costs, or the deposit of money instead, or the waiver thereof as in this chapter prescribed." The notice of appeal and the undertaking on appeal were duly served upon all of the defendants and filed with the clerk of the district court. Since service of the notice of appeal was timely made upon all of the defendants and filed in the office of the clerk of the district court, the fact that proof of such service was not filed until two days after the ex-

piration of the time for appeal was immaterial.

The second ground upon which defendants base their motion to dismiss goes to the sufficiency of the undertaking on appeal. The undertaking is as follows:

"Whereas, On the 24th day of April, 1952, in the District Court within and for the County of Williams, State of North Dakota, the Hon. Roy A. Ilvedson, Judge of the District Court, ordered Judgment in favor of the defendants and against the plaintiffs adjudging, determining and decreeing that the adverse claims of the plaintiffs and each of them are invalid, inferior and junior to the rights, title and interests of the defendants, Olaf Giske, A. M. Fruh, Thomas W. Leach and Carl Thompson, and thereby adjudging said claims of plaintiffs as null and void and further decreeing that they have no estate or interest in or lien or encumbrance upon the real property involved in said action; and the above named plaintiffs and appellants feeling aggrieved thereby, intend to appeal therefrom to the Supreme Court of the State of North Dakota; Now Therefore, We do hereby undertake that the said plaintiffs and appellants will pay all costs and damages which may be awarded against them on said appeal or on a dismissal thereof, not exceeding Two Hundred Fifty ($250.00) Dollars.

"Dated this 2 day of October A. D. 1952.

"Henry Strom
Henry Strobeck
Archie Borg."

The undertaking was signed by only one of the six plaintiff-appellants Henry Strom. Respondents contend therefore that since the five plaintiffs did not join in the execution of the undertaking they, in effect, failed to furnish an undertaking as required by statute. However the undertaking was executed and acknowledged by two

sureties. By its terms the sureties undertook that the plaintiffs would pay all costs and damages which might be awarded against them on appeal or on a dismissal thereof. Under the terms of the undertaking the sureties are obligated to pay any amount of costs and damage awarded the defendants against the plaintiffs on the appeal in the amount fixed by the undertaking.

As required by Section 28-2723 NDRC 1943 the sureties justified as to their financial worth over and above their debts and liabilities in property within the state not exempt by law from execution in double the amount specified in the undertaking. It does not appear that the defendants took any exception to the sufficiency of the sureties.

Section 28-2709 NDRC 1943, reads as follows:

"To render an appeal effectual for any purpose, an undertaking must be executed on the part of the appellant by at least two sureties to the effect that the appellant will pay all costs and damages which may be awarded against him on the appeal not exceeding two hundred fifty dollars."

The undertaking in the instant case complies with the requirements of said Section 28-2709 and is therefore sufficient in all respects.

The undisputed facts are substantially as follows:

Prior to the first day of October 1941 one Mary Strom was the record title owner of the real property described in the complaint. The post office address as shown in the office of the register of deeds of Williams County, North Dakota was Tioga, North Dakota. She resided at White Earth, North Dakota with her husband from the year 1923 until about the month of February 1935 when she died. The plaintiffs in this action are the heirs at law of said Mary Strom, but no administrator was ever appointed nor were any proceedings for the administration of her estate had in any county in the state of North Dakota.

Four of the plaintiffs, Effie Shearon, Ruth Stuart, Mabel Kong and Erwin Strom were non-residents. Henry Strom was a resident of the state and had resided at Fargo and Ross, North Dakota twenty two years. Robert also was a resident of the state and resided at Minot, North Dakota.

Taxes were legally assessed and levied by Williams County against the said described real property for the year 1934 but the taxes remained unpaid and were sold to Williams County at the annual tax sale on December 10, 1935. No redemption was made from said tax sale. On the 23rd day of May 1941 the county auditor of Williams County caused to be mailed to Mary Strom at White Earth, North Dakota a registered letter containing a notice of expiration of period of redemption in which the land was described as being in range 95 instead of range 96. On June 2, 1941 the envelope containing the notice was returned unopened with a notation thereon "deceased".

Thereafter the county auditor caused notice of expiration of period of redemption of the lands sold to the county at tax sale to be published in the official county newspaper, The Williston Daily Herald on August 1, 1941 in the form and in the manner prescribed by law. No redemption was made pursuant to such notice. On October 1st, 1941 the county auditor issued to Williams County a deed to the said described land in the statutory form known as "Auditor's Deed". Thereafter and in the year 1943 Williams County sold the said described land to the defendant Olaf Giske under contract for deed for a consideration of $200 and accumulated interest and on October 1, 1945 he received a deed from Williams County. Thereafter the defendant Olaf Giske conveyed to the defendants A. M. Fruh and Thomas W. Leach certain undivided interests in and to all of the oil, gas and other minerals in and under, and that may be produced on said lands. The defendants A. M. Fruh and Thomas W. Leach conveyed certain interests in said premises to the defendant Carl Thompson.

The trial court held that it would have been an idle act to attempt to serve the notice of expiration of the period of redemption upon the record title owner, since she was dead, and that the statutory requirements for service of such notice were complied with by the publication thereof in the form and manner provided by law. Accordingly the court held that the defendant Olaf Giske was the owner in fee simple of the real property described in the complaint, and that the defendants A. M. Fruh, Thomas W. Leach and Carl Thompson were the owners of certain undivided mineral interests in said real property; that the said defendants, severally, were the owners and entitled to the possession of said real property in accordance with their said interests free and clear of any claim or interest in or lien or incumbrance upon said real property by the plaintiffs or any or either of them. Judgment was accordingly rendered for the defendants and for the dismissal of plaintiffs' action.

The plaintiffs appealed from the judgment. They contend that the auditor's deed to Williams County and the deed by Williams County to Olaf Giske were void upon the following grounds:

1. That the notice of the period of redemption mailed to Mary Strom was fatally defective in that the description of the land was incorrect. The range was shown as 95 instead of 96.

2. That the notice of period of redemption was not mailed to the owner Mary Strom at Tioga, North Dakota which was her post office address shown by the records in the office of the register of deeds and the clerk of the district court of Williams County, North Dakota.

We shall first consider ground 1.

The rule is well settled in this state that a tax deed taken without strict compliance with the statutory requirements as to service of the notice of expiration of period of redemption is void. Section 57–2804, NDRC 1943 prescribes the duties of the county auditor relative to the method of serving the notice of expiration of the period of redemption upon the record title owner, mortgagees, lien holders and other persons interested as shown by the records in the office of the register of deeds and the clerk of court of the county in which the land is situated and is as follows:

"The county auditor shall serve the notice of the expiration of the period of redemption upon the owner of the record title of the real estate sold to the county for taxes, and upon each mortgagee, lien holder, and other person interested therein as may appear from the records of the register of deeds and the clerk of the district court of said county. Said notice shall be served by registered mail, and a registry and return receipt shall be demanded and filed with proof of service."

That the notice of redemption must contain a correct description of the land involved complete in itself has been held in numerous cases decided by this court including Blessett v. Turcotte, 20 N.D. 151, 127 N.W. 505; State Finance Co. v. Trimble, 16 N.D. 199, 112 N.W. 984; Star v. Norsteby, 75 N.D. 563, 30 N.W.2d 718.

In Blessett v. Turcotte the notice of expiration of the period of redemption was held void because it described the land as the NW¼ of Sec. 2, instead of NW¼ of Sec. 20.

In the case of State Finance Co. v. Trimble, the description in the notice was as follows: N½ and SE¼ of Sec. 12, Twp. 140, Rge. 63. The correct description was N½NE¼, SE¼NE¼, NE¼SE¼ of Sec. 12, Twp. 140, Rge. 63. The notice was held to be void.

Respondents contend that since the notice of expiration of the period of redemption was published as required by law no one was prejudiced by the failure of the county auditor to mail the redemption notice to the record title owner. They contend further that mailing the notice to the record title owner in the instant case would be an idle act since she was dead. They cite the case of Baird v. Zahl, 58 N.D. 388, 226 N.

W. 549, 551. However that case does not support their contention. We held there:

"Before a valid tax deed can issue, notice of expiration of the time for redemption must be given of the kind and in the manner prescribed by law. * * * This court has held that before a valid tax deed can issue there must be full compliance with all provisions of law intended for the protection of the taxpayer, and those having the right to redeem; but that errors or inaccuracies which do not affect the substance, which are trifling in their nature, and could not possibly have misled or prejudiced anyone, do not affect the validity of the notice of expiration of time for redemption."

And in the case of Cota v. McDermott, 73 N.D. 459, 16 N.W.2d 54, 58, 155 A.L.R. 1271, we said:

"As we construe this section (57–2804) the notice must be thus mailed to the addresses of those entitled thereto as furnished by the register of deeds and the clerk of the district court on the auditor's request. Here, the auditor, insofar as he was able to do so, followed the letter of the statute in his effort to make service of the notice. He mailed it to the defendant at her record post office address, which was also the post office nearest the land and served the residents of that vicinity. It is true that he did not file with his affidavit of proof the return receipt signed by the record owner. That was not possible. It was not sent back with the uncalled for letter containing the notice. But he did file the returned envelope with the postmaster's stamped notation thereon as to why it was returned. Of course, the letter not being called for and delivered, the receipt could not be signed and so it would not, in any event, have added anything to the proof made. The purpose in having the return receipt filed was to show the person, if any, to whom it was delivered. Clearly, the legislature could not have intended that if the addressee

did not receive the letter through no fault of the auditor the county could not take deed. On the contrary, it must have intended that an attempt should be made by the auditor, in the manner provided by the statute, to get service upon the tax debtor and that if he did everything required by the statute that he could do, there would be a sufficient service."

To the same effect is Messer v. Henlein, 72 N.D. 63, 4 N.W.2d 587, 589, where we said:

"This court has held on many occasions that a tax deed issued without strict compliance with the statutory requirements as to the service of notice of expiration of redemption is void. Blakemore v. Cooper, 15 N.D. 5, 106 N.W. 566, 4 L.R.A.,N.S., 1074, 125 Am. St.Rep. 574; Davidson v. Kepner, 37 N.D. 198, 163 N.W. 831; Baird v. Zahl, 58 N.D. 388, 226 N.W. 549; Biberdorf v. Juhnke, 59 N.D. 1, 228 N.W. 233. In Cruser v. Williams, 13 N.D. 284, 100 N.W. 721, this court said: 'The redemption period does not terminate, or the certificate of sale mature, or title pass, until the statutory notice of the expiration of redemption has been given.' It is thus clear that the issuance of a tax deed to Stark County of the property here in suit did not operate to cut off defendant's right of redemption nor vest title in the county. It also follows that plaintiff acquired no title to the property for his grantor could not convey that which it did not possess."

▇▇▇▇ Under Section 57–2804 it was the duty of the county auditor to send to the record title owner by registered mail a notice of expiration of the period of redemption containing a correct description of the land involved. It is admitted that the notice of expiration of the period of redemption sent by the county auditor to Mary Strom at White Earth described the land as being in Range 95, whereas it was actually situated in Range 96. The notice mailed to Mary Strom was therefore fatally

defective and the attempted service upon her was as ineffectual as if no attempt to make service upon her had ever been made. The auditor's deed to Williams County and the tax deed issued by the county to defendant Olaf Giske were therefore void and of no effect.

However, the defendant Giske contends that because of laches on the part of the plaintiffs in bringing the action the same is barred. He purchased the land in 1943 and they brought their action in 1951. The trial court having held that the tax deed proceedings were regular and valid, did not pass on the question of laches.

 It is argued that since the discovery of oil the land in question has increased in value from $1.25 per acre to several hundred dollars per acre and that this increase in value has accrued to the benefit of the respondent Giske; that it would be unjust and inequitable to sustain plaintiffs' cause of action at this time.

It is well established that laches is a question of fact and each case must stand or fall on its own facts and circumstances. In the case of Grandin v. Gardiner, N.D., 63 N.W.2d 128, 134, this court quoted with approval from Jones v. McNabb, 184 Okl. 9, 84 P.2d 429, as follows:

" 'The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is delay that works a disadvantage to another and causes change of condition or relation during the period of delay. The failure of the owner of real estate to pay taxes thereon from 1911 to 1936, and the payment of such taxes by the purchaser at a tax sale, and the increase in value of the property by the discovery of oil nearby, held not sufficient to sustain a defense of laches in favor of the holder of a void tax dec.' "

And in Larson v. Quanrud, Brink & Reibold, 78 N.D. 70, 47 N.W.2d 743, 745, 29 A.L.R.2d 230, Syllabus 9, we said:

"Laches does not arise from mere delay or lapse of time. The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and fail to assert them against a party who has in good faith permitted his position to become so changed that he cannot be restored to his former state."

In the case of Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 691, 117 A.L.R. 1066, the Supreme Court of Texas said:

"The question is not strictly one of delay in instituting suit after the accrual of the cause of action, which is usually determinable by the period of limitation fixed by statute. Here the delay is in asserting the right by making selection of the particular acre. Turner waited nearly nine years and a half to select the one acre and gave no explanation of the delay. In Dull v. Blum, 68 Tex. 299, 301, 4 S.W. 489, it was held that a similar right was lost by an unexplained delay of twenty years in making choice of the land. It is our opinion that Turner's delay, a little less than ten years, though long and unexplained, cannot be held sufficient to defeat his right because the facts as to the effects of the delay have not been developed. Except in case of extreme delay like that in Dull v. Blum, supra, delay, which works no injury or no disadvantage to another, is not such laches as will bar a right." (Numerous citations.)

In the case of McIver v. Norman, 187 Or. 516, 205 P.2d 137, 213 P.2d 144, 153, 13 A.L.R.2d 749, the Supreme Court of Oregon held:

"Another well-recognized rule is that in cases of this kind courts of equity act by analogy to the statutory limitations of actions at law, and hold that when suit is brought within the time fixed by the analogous statute the burden is on the defendant to show the existence of the circumstances amounting to laches, whereas, if the suit is

brought after the statutory time, plaintiff must plead and prove that laches does not exist."

And in the case of Neff v. Calk, 198 Okl. 379, 178 P.2d 624, 626, the Supreme Court of the State said:

"Ordinarily, the courts apply by analogy the period of limitations fixed by statute to the plea of laches. Wilson v. Bombeck, 38 Okl. 498, 134 P. 382; 19 Am.Jur. 345; 30 C.J.S., Equity, § 131, page 557. And where, as here, the limitation period has not run, the burden is upon the plaintiff to plead and prove facts showing prejudice by the delay. Parks v. Classen Co., 156 Okl. 43, 9 P.2d 432; 19 Am.Jur. 346; 30 C.J.S., Equity, § 132, page 563."

Likewise in the case of Gaffney v. Harmon, 405 Ill. 273, 90 N.E.2d 785, 789, the Supreme Court of Illinois held that the doctrine of laches will be applied by a court of equity in denial of relief when the period of limitations has not expired, only where from all of the circumstances in evidence, to grant relief to which the complainant would otherwise be entitled, would, presumptively be inequitable and unjust to defendants. Referring to the doctrine of laches the court said:

"In the recent case of Rogers v. Barton, 386 Ill. 244, 53 N.E.2d 862, 866, we reaffirmed that principle, saying: 'In an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of laches will be considered.' "

The defendant Olaf Giske testified that none of the plaintiffs had ever at any time made any claim to said described land and that the first time that they showed any interest in said land was on the 3rd day of July 1951 a few months after the discovery of oil in the vicinity of the land, when they drove to his farm and stated that they had examined the record and asked him to give them a quitclaim deed to the land.

He testified further that in June 1940 he took one of the plaintiffs, Erwin Strom out to see the land and that Erwin Strom said:

"I could use the land, he would have no objection to me having the land."

The plaintiff Henry Strom testified that the first time he knew the land had been sold for taxes was "in April 1951, when the Amerada man came down there and wanted a quitclaim deed."

It may be noted here that Amerada Petroleum Corporation was originally joined as a defendant, but later withdrew from the action by stipulation of all of the parties.

In November 1948 Effie Shearon one of the plaintiffs who resided in Seattle, Washington wrote a letter to the county treasurer of Williams County which was admitted in evidence by stipulation, in which she stated that her mother Mary Strom or her father Edward Strom had some land south of Tioga, but she did not know the legal description. She asked the treasurer to check the records in his office and advise her as she wished to pay whatever taxes there might be due on the land. The treasurer returned the letter to her with a notation on the back thereof stating he was unable to find any land in the name of Mary Strom or Edward Strom, but suggested that she write to one of the neighbors who might be able to give her the desired information.

The only testimony as to the value of the land in controversy is that of the defendant Olaf Giske. He stated that prior to the discovery of oil the land was worth about $6.50 per acre, and that after the discovery of oil it was worth $250 per acre. There is no other testimony in the record as to the value of the land. So far as the record and evidence show no oil has been discovered nor has any drilling for oil been done on the land. The improvements he had made were not extensive.

He had plowed twelve acres at a cost of $7 per acre, and had spent some $500 for a fence he had erected on the land.

The change in the status of the parties as claimed by the defendant Olaf Giske, is that the discovery of oil in the vicinity of the land in question greatly enhanced its value, and that it would be inequitable and unjust to permit the plaintiffs to prevail in this action. However, the discovery of oil was not the result of any effort or activity on the part of the defendant Giske. Whatever sums he may have expended in improving the land during his occupancy thereof may be easily ascertained so that he can be compensated therefor and thus be restored to his former status.

Section 47–0603, NDRC 1943, as amended by Chapter 276, Session Laws 1951 provides:

"A title to real property, vested in any person or those under whom he claims, who shall have been in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who shall have paid all taxes and assessments legally levied thereon, shall be valid in law. * * *"

As we have pointed out herein, the courts ordinarily apply by analogy the period of limitations fixed by statute to the plea of laches. In the instant case the defendant Olaf Giske purchased the land in controversy from Williams County in 1943. In 1951 eight years later, the plaintiffs brought action. At that time the defendant Giske had not been in the actual open and undisputed possession of the land and had not paid the taxes and assessments legally levied thereon for a period of ten years. Plaintiffs' action was therefore not barred by the statute. We hold therefore upon the record and the evidence that the defendants have failed to sustain the defense of laches as against the void tax deed held by the defendant Olaf Giske. Since this determines the issues presented on the appeal it will not be necessary to consider the second specification urged by the plaintiffs-appellants.

■ Williams County was made a party defendant in this action but it did not answer and no appearance was made on its behalf. Section 57–4510, 1953 Supp. NDRC 1943, provides:

"Whenever any action at law or in equity is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the court shall not proceed with the trial of such action until the party assailing the validity of such deed, within the time required by the court, shall deposit with the clerk thereof for the benefit of the county should the deed be held invalid, the amount of all delinquent and unpaid taxes on said property, including penalty and interest, plus any taxes paid thereon by the purchaser from the county. Should said action be determined adversely to the purchaser from the county it shall repay to him any moneys received by the county on said purchase."

No deposit was made by the plaintiffs and no determination was made by the trial court of the amount of the deposit to be made by the plaintiffs as required by said Section 57–4510. A similar question was before this court in the case of Belakjon v. Hilstad, 78 N.D. 194, 48 N.W.2d 747. In that case we held that although the county made no formal demand for judgment in the amount of taxes, penalties and interest during the years that taxes had not been paid by the record title owner, the county was entitled to judgment therefor, and accordingly the case was remanded to the district court for a determination of the deposit required by the statute.

The decision in Belakjon v. Hilstad, supra, is controlling in the instant case relative to the requirement of a deposit under said Section 57–4510. The judgment is reversed and remanded with directions

848

to the district court to determine the amount of deposit to be made by appellants as required by the statute and that further proceedings be had conformable to law.

MORRIS, C. J., and BURKE and GRIMSON, JJ., concur.

JOHNSON, J., did not participate.

On Petition for Rehearing.

SATHRE, Judge.

■ A petition for rehearing has been filed by the respondent in which it is strenuously argued that the principle of law embodied in Section 57–2705, NDRC 1943, as amended by Chapter 276 of the Session Laws of 1951 was overlooked in the opinion prepared herein. The county auditor's deed to Williams County of the real property involved in this action was issued October 1, 1941. At that time Section 2206, Compiled Laws of North Dakota of 1913 was in force and effect. That Statute is identical with Section 57–2705, NDRC 1943 as amended by Chapter 276 of the Session Laws of 1951. The last clause of said Section reads as follows:

"Such deed shall be conclusive evidence of the truth of all facts therein recited and prima facie evidence of the regularity of all the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed."

It is contended that that portion quoted is a rule of evidence which has been prescribed by the legislature and is binding upon the court where timely objection has been made to the reception of evidence which tends to refute the factual recital contained in the tax deed. The tax deed contains the following recitations:

"And it appearing that such real property has not been redeemed from such sale; that notice of the expiration of the right to redeem from such sale has been given as required by law; that

ninety days have expired since the completed service of such notice; that proof of legal notice of expiration of the period of redemption has been filed in the office of the County Auditor as required by law".

This court has held that under the provisions of Section 2206, Comp.Laws of 1913, a tax deed executed by the county auditor is " 'prima facie evidence of the regularity of all the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed.' " Twedt v. Hanson, 58 N.D. 571, 226 N.W. 615, 618; Peterson v. Reishus, 66 N.D. 436, 266 N.W. 417, 105 A.L.R. 724; Axt v. Bank of America, 72 N.D. 600, 10 N.W.2d 430.

It follows therefore that such prima facie proof may be overcome by clear evidence that the notice of expiration of period of redemption had not been served in the manner and form required by statute. It has been pointed out in the opinion herein that in the tax deed proceedings had by Williams County there was an absolute failure of compliance with the statutory requirements for service of the notice of expiration of the period of redemption. The recitation in the tax deed that the notice of the expiration of right to redeem from such sale had been given as required by law was prima facie evidence only and became ineffective when the tax deed proceedings showed affirmatively that there had been an absolute failure of service of the notice of expiration of period of redemption in the manner required by law.

Section 2206 of the Compiled Laws of 1913, which is identical with Section 57–2705, NDRC 1943 as amended by Chapter 276 of the Session Laws of 1951 was in force and effect until adoption of the Revised Code of North Dakota in 1943. During the effective date thereof the question as to the necessity for service of the notice of expiration of period of redemption has been considered by this court on many occasions and we have invariably held that the statutory requirements for service of such notice must be strictly complied with.

Biberdorf v. Juhnke, 59 N.D. 1, 228 N.W. 233; Messer v. Henlein, 72 N.D. 63, 4 N.W. 2d. 587; Davidson v. Kepner, 37 N.D. 198, 163 N.W. 831.

Rehearing denied.

BURKE, C. J., and MORRIS and GRIM-SON, JJ., concur.

JOHNSON, J., did not participate.